UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| MELISSA A. BATES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:16-CV-1572 NAB |
| | ) | |
| NANCY A. BERRYHILL[1], | ) | |
| Deputy Commissioner for Operations, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This is an action under 42 U.S.C. § 405(g) for judicial review of the Commissioner of Social Security's final decision denying Melissa Bates' application for supplemental security income under the Social Security Act, 42 U.S.C. § 416 *et seq.* Bates alleged disability due to a back condition. (Tr. 148.) The parties have consented to the exercise of authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). [Doc. 26.]

Although Bates' application was made based on her physical impairments, the medical record also revealed severe mental impairments, which are the subject of this appeal. The record contains two medical opinions regarding Bates' mental health impairments. Dr. Kirmach Natani, a Social Security consulting psychologist, examined Bates and provided a written medical opinion on September 9, 2013. (Tr. 250-253.) A non-examining agency psychologist, Dr. Robert Cottone, examined Bates' medical records and provided an opinion on October 9, 2013.

---

[1] At the time this case was filed, Carolyn W. Colvin was the Acting Commissioner of Social Security. As of November 2017, Nancy A. Berryhill became the Deputy Commissioner of Operations, operating as the Commissioner of Social Security while the position is vacant. When a public officer ceases to hold office while an action is pending, the officer's successor is automatically substituted as a party. Fed. R. Civ. P. 25(d). Later proceedings should be in the substituted party's name and the Court may order substitution at any time. *Id.* The Court will order the Clerk of the Court to substitute Nancy A. Berryhill for Carolyn W. Colvin in this matter.

(Tr. 58-60.) The administrative law judge (ALJ) gave significant weight specifically to the global assessment functioning (GAF) score assessed by Dr. Natani, but did not comment on the weight given to the opinion as a whole. The ALJ also gave Dr. Cottone's opinion significant weight. A substantial portion of Bates' medical treatment regarding her mental impairments occurred after the doctors' opinions were written.

Bates asserts that the administrative law judge (ALJ) failed to properly weigh and consider the medical opinion evidence. Specifically, Bates states the ALJ erred by not weighing Dr. Natani's opinion and giving significant weight to Dr. Cottone's opinion. The Commissioner contends that the ALJ's decision is supported by substantial evidence in the record as a whole. For the following reasons, the Court will affirm the ALJ's decision.

## I. Standard of Review

The Social Security Act defines disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(i)(1)(A). The standard of review is narrow. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). This Court reviews the decision of the ALJ to determine whether the decision is supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find adequate support for the ALJ's decision. *Smith v. Shalala,* 31 F.3d 715, 717 (8th Cir. 1994). The Court determines whether evidence is substantial by considering evidence that detracts from the Commissioner's decision as well as evidence that supports it. *Cox v. Barnhart*, 471 F.3d 902, 906 (8th Cir. 2006). The Court may not reverse just because substantial evidence exists that would support a contrary outcome or because the Court would

have decided the case differently. *Id.* If, after reviewing the record as a whole, the Court finds it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's finding, the Commissioner's decision must be affirmed. *Masterson v. Barnhart*, 363 F.3d 731, 736 (8th Cir. 2004). The Court must affirm the Commissioner's decision so long as it conforms to the law and is supported by substantial evidence on the record as a whole. *Collins ex rel. Williams v. Barnhart*, 335 F.3d 726, 729 (8th Cir. 2003).

## II. Discussion

The ALJ found that Bates had the severe impairments of degenerative disc disease of the cervical and lumbar spine, obesity, anxiety disorder, depression, and polysubstance abuse. (Tr. 12.) The RFC is defined as what the claimant can do despite his or her limitations, and includes an assessment of physical abilities and mental impairments. 20 C.F.R. § 416.945(a). The RFC is a function-by-function assessment of an individual's ability to do work related activities on a regular and continuing basis.[2] SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). It is the ALJ's responsibility to determine the claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians, and the claimant's own descriptions of his limitations. *Pearsall*, 274 F.3d at 1217. A RFC determination made by an ALJ will be upheld if it is supported by substantial evidence in the record. *See Cox*, 471 F.3d at 907.

In addressing Bates' severe mental impairments, the ALJ found that Bates had the RFC to perform sedentary work with the following limitations: (1) simple, routine tasks in an environment where there are only occasional workplace changes and (2) occasional contact with

---

[2] A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule. SSR 96-8p, 1996 WL 374184, at *1.

supervisors, co-workers, or the general public. (Tr. 13.) The ALJ referenced Dr. Natani and Dr. Cottone's medical opinions in support of the RFC determination. (Tr. 18.)

Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis and prognosis, and what the claimant can still do despite impairments and physical or mental restrictions. 20 C.F.R. § 416.927(a)(2)[3]. All medical opinions, regardless of the source, are weighed based on (1) whether the provider examined the claimant; (2) whether the provider is a treating source; (3) length of treatment relationship and frequency of examination, including nature and extent of the treatment relationship; (4) supportability of opinion with medical signs, laboratory findings, and explanation; (5) consistency with the record as a whole; (6) specialization; and (7) other factors which tend to support or contradict the opinion. 20 C.F.R. § 416.927(c). Now the Court will address each doctor's opinion in turn.

### A. Dr. Kirmach Natani

Dr. Natani prepared a written psychological evaluation of Bates on September 19, 2013. (Tr. 250-53.) The mental status examination demonstrated that Bates was alert and oriented to time, place, and person. (Tr. 251.) Her appearance was adequate with good eye contact. (Tr. 251.) She was cooperative with speech within normal limits. (Tr. 251.) Dr. Natani described Bates as "preoccupied with being a homeless person at age 41 years and very upset about her current circumstances." (Tr. 251.) He described her mood as depressed with an anxious affect. (Tr. 251.) He also observed that her thoughts were logical, coherent, and relevant. (Tr. 251.) Dr. Natani noted that she had limited insight and fair judgment. (Tr. 252.)

---

[3] Many Social Security regulations were amended effective March 27, 2017. Per 20 C.F.R. §§ 416.325, 416.927, the court will use the regulations in effect at the time that this claim was filed.

4

Dr. Natani diagnosed Bates with posttraumatic stress disorder (PTSD); dysthymic disorder, late onset, recurrent with anger and irritable features; a history of self-medication with alcohol, cannabis, and tobacco; anxiety disorder due to a general medical condition; parent-child relational problem with her mother and her child, alcohol related disorder, and cannabis-related disorder. (Tr. 252-53.) Dr. Natani opined that Bates had a GAF score of 60, which indicates moderate limitations related to her anxiety and depression. (Tr. 253.) The ALJ gave significant weight to the GAF score, asserting that "Dr. Natani thoroughly reviewed the claimant's psychiatric history and conducted a detailed clinical interview before offering his conclusion." (Tr. 18.)

Plaintiff asserts that the ALJ's failure to give weight to Dr. Natani's entire opinion and reliance solely on Dr. Natani's GAF score was reversible error. The Commissioner asserts that the ALJ was not required to assign a particular weight to Dr. Natani's clinical findings, only to a medical opinion and the only portion of Dr. Natani's evaluation that constituted a medical opinion was the GAF score. Also, the Commissioner contends that the ALJ considered Dr. Natani's observations, because he discussed them.

The GAF scale is "a numeric scale used to rate social, occupational, and psychological functioning on a hypothetical continuum of mental-health illness." *Mabry v. Colvin*, 815 F.3d 386, 391 n. 6 (8th Cir. 2016) (citing *Pates-Fire v. Astrue*, 564 F.3d 935, 937 n.1 (8th Cir. 2001)). "The scale ranges from zero to one hundred." *Id.* A GAF score is a "subjective determination that represents the clinician's judgment of the individual's overall level of functioning." *Jones v. Astrue*, 619 F.3d 963, 973 (8th Cir. 2010). "The most recent edition of the Diagnostic and Statistical Manual of Mental Disorders discontinued use of the GAF scale." *Id.*

Even before the DSM-V discontinued use of the GAF scores, the Commissioner declined to fully endorse GAF scores for use in social security and SSI disability programs. *Halverson v. Astrue*, 600 F.3d 922, 930-31 (8th Cir. 2010). "GAF scores may be relevant to a determination of disability based on mental impairments. But an ALJ may afford greater weight to medical evidence and testimony than to GAF scores when the evidence requires it." *Mabry*, 815 F.3d at 391. GAF scores have no direct correlation to the severity standard used by the Commissioner. *Wright v. Colvin*, 789 F.3d 847, 855 (8th Cir. 2015) (citing 65 Fed. Reg. 50746, 50764-65).

"State agency medical and psychological consultants and other program physicians, psychologists, and other medical specialists are highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation." 20 C.F.R. § 416.927(e)(2)(i). "Therefore, administrative law judges must consider findings and other opinions of State agency medical and psychological consultants and other program physicians, psychologists, and other medical specialists as opinion evidence, except for the ultimate determination about whether a claimant is disabled." *Id.* Unless the claimant's treating source is given controlling weight, the administrative law judge must explain the weight given to the opinions of a state agency psychological consultant. *Id.* "A single evaluation by a nontreating psychologist is generally not entitled to controlling weight." *Teague v. Astrue*, 638 F.3d 611, 615 (8th Cir. 2011). "The ALJ is not required to accept every opinion given by a consultative examiner, however, but must weigh all the evidence in the record." *Mabry*, 815 F.3d at 391. "The interpretation of physicians' findings is a factual matter left to the ALJ's authority." *Id.*

As an initial matter, the Court finds that the ALJ did not ignore Dr. Natani's opinion. The ALJ summarized most of Dr. Natani's findings. The Court is puzzled as to why the ALJ

6

gave weight specifically to the GAF score as if it were separate from the remainder of the opinion. Nevertheless, the Social Security Administration has stated that GAF scores are considered opinion evidence, even though they should not be viewed as case determinative. CAROLYN A. KUBITSCHEK & JON C. DUBIN, SOCIAL SECURITY DISABILITY LAW & PROCEDURE IN FEDERAL COURT, § 5:30, ed. (February 2017 Update) (citing Administrative Message 13066 (July 22, 2013)). Also, most importantly, the ALJ gave significant weight to Dr. Cottone's opinion, which due to the limited record available to him, was based on his review of Dr. Natani's opinion, Bates' adult function report, and one other medical record. (Tr. 59-60.)

Bates also contends that the RFC does not account for the limited insight observed by Dr. Natani and the anger issues that she described in her mental health counseling that occurred after Dr. Natani's examination. Bates states that her limited insight regarding the effects of her angry outbursts significantly interferes with her ability to sustain competitive employment. The record does not support Bates' assertion.

In making a disability determination, the ALJ shall "always consider the medical opinions in the case record together with the rest of the relevant evidence in the record." 20 C.F.R. § 416.927(b). "A disability claimant has the burden to establish her RFC." *Eichelberger*, 390 F.3d 584, 591 (8th Cir. 2004) (citing *Masterson*, 363 F.3d at 737). The ALJ "is not required to rely entirely on a particular physician's opinion or choose between the opinions of any of the claimant's physicians." *Martise v. Astrue*, 641 F.3d 909, 927 (8th Cir. 2011). The RFC determination is based on all of the evidence in the medical record, not any particular doctor's treatment notes or medical opinion.

In counseling, Bates expressed anger issues toward her family members, however, she left work due to the effects of her physical impairments not her mental impairments. (Tr. 31,

148, 198, 351-52.)  There is no evidence in the record that she had problems with anger toward any of her former co-workers, supervisors, or the general public in her previous employment.  In her adult function report, Bates wrote that she followed written and spoken instructions "well" or "somewhat well."  (Tr. 197.)  Bates also wrote that she got along "well" with authority figures.  (Tr. 198.)  Although she answered yes, to the inquiry whether she had been fired or laid off because of problems getting along with other people, her written response indicated something different.  (Tr. 198.)  She wrote "I was fired from Massage Envy for being to [sic] slow.  It was because of my neck/back pain."  (Tr. 198.)  In her testimony, Bates stated that she didn't like being around crowds.  (Tr. 39.)  She also testified that she had problems getting along with people in the workplace, because people say rude things "on the sly."  (Tr. 39.)  All of her anger issues discussed in counseling focused on family relationships, not anyone else.  (Tr. 298, 305, 307, 316, 324, 328-31, 339, 344, 352.)  In her final counseling session, Bates stated that she was doing better, because she was "staying away from people."  (Tr. 298.)  But, when triggers were discussed, Bates indicated she wanted to stay angry to protect herself and then discussed several volatile family relationships.  (Tr. 298.)  All of Bates' mental status examinations during her counseling sessions indicated she was operating within normal limits.  (Tr. 298, 305, 307, 310, 316, 323, 328.)  The very restrictive RFC determination accounted for the moderate limitations indicated by Dr. Natani's clinical findings, the GAF score, and the subsequent evidence from her counseling sessions.

Based on the foregoing, the Court does not find the ALJ committed reversible error.  Assuming the ALJ erred, reversal and remand is not required if the ALJ's error was harmless and did not affect the outcome of the claim.  To show that an error was not harmless, a claimant must provide some indication that the ALJ would have decided the case differently if the error had not

occurred. *Byes v. Astrue*, 687 F.3d 913, 917 (8th Cir. 2012). Although the ALJ unnecessarily focused on the GAF score given by Dr. Natani, any error made by only giving weight to the GAF score was harmless, and would not have changed the outcome of the case.

### B. Dr. Robert Cottone

Now the Court turns to Dr. Cottone's opinion. Dr. Cottone reviewed the medical record as of the date of his opinion in October 2013. The mental medical record as of that date included a visit to Dr. Denise Buck on March 8, 2013 and Dr. Natani's consultative examination. (Tr. 233-34, 250-53.) Dr. Buck, a primary care physician, diagnosed Bates with panic attacks/depression and recommended a full psychological evaluation. (Tr. 234.)

Dr. Cottone diagnosed Bates with anxiety and affective disorder. (Tr. 58.) He opined that Bates had moderate restrictions in activities of daily living and moderate difficulties in maintaining social functioning, concentration, persistence, or pace. (Tr. 59.) Dr. Cottone noted that Bates had no history of psychiatric treatment or current psychological treatment in her file. He also noted that she had not been on psychiatric medication. The ALJ gave significant weight to Dr. Cottone's opinion stating that, "his opinion is consistent with the claimant's demeanor at the hearing, which is that of a woman capable of meeting the day-to-day demands of sedentary, unskilled work so long as that work allows for the limitations contained in the residual functional capacity finding above." (Tr. 18.) Bates asserts that Dr. Cottone's opinion was outdated, it was inconsistent with Dr. Natani's findings, and it did not provide substantial evidence to support the decision of the ALJ. The Commissioner responds that although Dr. Cottone did not review all of Bates' medical records, the ALJ reviewed the entire record in formulating the RFC and nothing in Bates' subsequent treatment notes supported greater limitations than the ones the ALJ assessed.

9

"The opinions of non-treating practitioners who have attempted to evaluate the claimant without examination do not normally constitute substantial evidence on the record as whole." *Vossen v. Astrue*, 612 F.3d 1011, 1016 (8th Cir. 2010). "The regulations also provide that when evaluating a nonexamining source's opinion, the ALJ evaluates the degree to which these opinions consider all of the pertinent evidence in the claim including opinions of treating and other examining sources." *Wildman v. Astrue*, 596 F.3d 959, 967 (8th Cir. 2010). "[The] opinion of a nonexamining consulting physician is afforded less weight if the consulting physician did not have access to relevant medical records made after the date of evaluation." *McCoy v. Astrue*, 648 F.3d 605, 615 (8th Cir. 2011).

In this case, Dr. Natani and Dr. Cottone's opinions were completed before Bates began her mental health treatment. The mental health treatment occurred between January 2014 and September 2014. (Tr. 296-354.) At each visit, the graduate student who provided treatment noted that Bates' mental status examinations were within normal limits. (Tr. 298, 305, 307, 310, 316, 323, 328.) In March 2015, Dr. Christopher Wedell, a primary care physician, noted that Bates had clinically significant symptoms of depression and referred her to mental health treatment. (Tr. 278.)

In this case, the Court finds no legal error in the ALJ's assessment of Dr. Cottone's opinion[4]. Usually, a doctor's opinion given before treatment begins would receive less weight. In this case, however, the additional information from the subsequent treatment does not appear to show any deterioration of Bates' condition from the time she was examined by Dr. Natani. A review of the medical record before and after Dr. Cottone's opinion does not support Bates' argument for greater RFC limitations regarding her interaction with co-workers and supervisors.

---

[4] The Commissioner acknowledges that the ALJ erroneously indicated that Dr. Cottone performed a consultative examination of the claimant in a portion of her opinion. (Tr. 18.)

As noted above, Bates' primary triggers for her mental health symptoms were her troubled relationships with family members. For a period of time, she lived with the family members that were the source of her angry outbursts. Even after she became homeless, the discussions regarding her anger management involved those same family members. All of her providers indicated that her mental status examinations were within normal limits. Therefore, the Court finds that the ALJ did not legally err in her assessment of Dr. Cottone's opinion. The ALJ's decision was supported by substantial evidence in the record as a whole and will be affirmed.

Accordingly,

**IT IS HEREBY ORDERED** that the relief requested in Plaintiff's Complaint and Brief in Support of Complaint is **DENIED**. [Docs. 1, 18.]

**IT IS FURTHER ORDERED** that the Court will enter a judgment in favor of the Commissioner affirming the decision of the administrative law judge.

Dated this 28th day of March, 2018.

    /s/ Nannette A. Baker
NANNETTE A. BAKER
UNITED STATES MAGISTRATE JUDGE